PECO ENERGY COMPANY and Pennsylvania Department of Environmental Protection and United States Environmental Protection Agency

v.

INSURANCE COMPANY OF NORTH AMERICA, for Itself and as Successor to the Indemnity Insurance Company of North America, et al.

Appeal of: Commercial Union Insurance Company, Hudson Insurance Company, Allstate Insurance Company, Solely as Successor in Interest to Northbrook Excess and Surplus Insurance Company, the Home Insurance Company, Old Republic Insurance Company, First State Insurance Company, Twin City Fire Insurance Company, Great Southwest Fire Insurance Company, the Continental Insurance Company, Employers Mutual Liability Insurance Company of Wisconsin (n/k/a Employers Insurance Company of Wausau, a Mutual Company), Century Indemnity Company, as Successor to CCI Insurance Company, as Successor to Insurance Company of North America (On its Own Behalf and as

Successor to Indemnity Insurance Company of North America), and as Successor to Cigna Specialty Insurance Company (Formerly Known as California Union Insurance Company).

Peco Energy Company

v.

Pennsylvania Department of Environmental Protection and United States Environmental Protection Agency

v.

Insurance Company Of North America, for Itself and as a Successor to the Indemnity Insurance Company of North America, et al.

Appeal of: Birmingham Fire Insurance Company of Pennsylvania, the Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and Providence Washington Insurance Company.

Superior Court of Pennsylvania.

Argued May 5, 2004.
Filed June 14, 2004.

John C. Falls, Philadelphia, for Commercial Union Ins., appellant(at 392).

William H. Howard, Philadelphia, for Lexington, Providence, Ins. Co. of Pa., Birmingham Fire, Nat'l Union Fire, appellants(at 1247).

Paul DelVecchio and Joanne La Rose, Pittsbugh, for appellees.

Before: STEVENS, BENDER and MONTEMURO *, JJ.

* Retired Justice assigned to Superior Court.

MONTEMURO, J.:

¶ 1 This is a consolidated appeal[1] challenging the Order entered on January 2, 2003, in the Chester County Court of Common Pleas, granting Appellee PECO's motion to compel discovery.

¶ 2 This evidentiary dispute arose from in the context of a claim against numerous liability and property insurers for indemnity and reimbursement of costs incurred as a result of Appellee's liability for environmental damage sustained at and around various manufactured gas plants and waste storage areas. Appellee sought additional damages for Appellants' breach of their respective insurance contracts. The present appeal concerns Appellee's attempt to discover allegedly privileged reinsurance, reserves and other policy information that would reveal, *inter alia,* the extent of Appellants' coverage obligations.

■ ¶ 3 In April of 2000, Appellee served its first set of interrogatories and document requests seeking, *inter alia,* information regarding Appellants' reinsurance,[2] reserves,[3] and other policyholders' claim files. In July of 2000, Appellants served their individual written objections and responses. In February of 2001, the parties stipulated to a Confidentiality Agreement, defining protected material, preserving the parties' rights to object to the production of such information, and ensuring the return or destruction of any sensitive information surrendered through discovery. Following depositions and a "meet and confer" process, Appellee moved to compel the production of documents and interrogatories concerning reinsurance, reserves, and non-party claims files. Appellants, who sought a blanket exclusion of this evidence, filed both individual protective motions and a joint brief in opposition to the motion to compel discovery.[4] On January 2, 2003, the trial court entered an Order granting Appellee's motion to compel production of the requested materials, but expressly preserving Appellants' right to assert any applicable privilege with respect to individual documents. This timely appeal followed.

¶ 4 On appeal, Appellants argue against the discovery of reinsurance, reserves, and

1. The first appeal, taken by Birmingham Fire Insurance Company of Pennsylvania, *et al,* was filed in the Commonwealth Court and docketed at No. 287 CD 2003. On March 3, 2003, the Commonwealth Court *sua sponte* transferred this appeal to this Court, at which point the case was re-docketed at 1247 EDA 2003. The second appeal was filed in the Superior Court by Commercial Union Insurance Company and docketed at 392 EDA 2003. The two appeals were consolidated on March 25, 2003. Appellants filed a joint appellate brief.

2. Reinsurance agreements represent:
   [t]he ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss.

*Reid v. Ruffin,* 314 Pa.Super. 46, 460 A.2d 757, 761 (1983), *aff'd,* 503 Pa. 458, 469 A.2d 1030 (1983) (citations omitted).

3. An insurance reserve is a pool of funds allocated to satisfy obligations that may arise under a claim.

4. We note that, although the joint brief in opposition to the motion to compel discovery did not specifically mention privilege defenses, several individual protective motions did. Moreover, two Pa.R.A.P.1925(b) Statements were submitted, both raising privilege issues later addressed in the trial court's December 5, 2003, Opinion. *See Paden v. Baker Concrete Construction, Inc.,* 540 Pa. 409, 658 A.2d 341, 342–43 (1995) (describing trial court's discretion to overlook procedural defects when opposing party not prejudiced) (citing Pa.R.C.P. 126). Here, Appellee had notice of Appellants' privilege objections, and, thus, was not prejudiced.

non-party claims evidence on the grounds that this information lacks relevance and is protected by the attorney-client, work product, and trade secret privileges. Prior to examining Appellants' claims, however, we must determine whether this appeal is properly before us.

¶ 5 Generally, discovery orders are not appealable as they do not dispose of the litigation. *See Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1220 (Pa.Super.2003). However, Pennsylvania Rule of Appellate Procedure 313 provides that appeals may be taken from collateral orders, that is, those which are "separable from and collateral to the main cause of action where the right is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313. Appellate review is appropriate when a colorable claim of privilege is asserted. *See Gocial, supra.* Thus, we find the instant discovery order collateral and appealable as it implicates potentially privileged material. *See also Dibble v. Penn State Geisinger, Inc.,* 806 A.2d 866, 869 (Pa.Super.2002), *appeal denied,* 573 Pa. 666, 820 A.2d 705 (2003).

¶ 6 Appellants first contend that the trial court erred in compelling production of purportedly privileged reinsurance information because such information is irrelevant absent a showing of ambiguity. Further, Appellants claim that even if relevance is established, reinsurance evidence is non-discoverable under the attorney-client, work product and trade secret privileges. Finally, Appellants maintain that the dissemination of reinsurance information would threaten the very foundation of the reinsurance market.

¶ 7 The trial court is responsible for "[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure." *Hutchison v. Luddy,* 414 Pa.Super. 138, 606 A.2d 905, 908 (1992) (citation and internal quotations omitted). Pennsylvania Rule of Civil Procedure 4003.1 states:

*Rule 4003.1  Scope of Discovery Generally.  Opinions and Contentions*

(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

(b) It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Pa.R.C.P. 4003.1(a)(b). *See also Lloyd v. CAT Fund,* 573 Pa. 114, 821 A.2d 1230, 1236 (2003). Generally, discovery "is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." *George v. Schirra,* 814 A.2d 202, 205 (Pa.Super.2002) (citations omitted).

¶ 8 There is no Pennsylvania appellate authority addressing this issue; thus, Appellants turn to federal law for the concept that reinsurance information bears little relevance in insurance cases. The Eastern District of Pennsylvania has held that reinsurance information is directly relevant to rebutting Appellants' affirmative defense of late notice, however, because evidence that reinsurers were given early or timely notice would tend to establish that the insurers themselves had notice. *See Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 1991 WL 237636 at *3 (E.D.Pa. Nov.7, 1991) (holding that reinsurance information is always relevant to

rebut defense).[5] Accordingly, we now turn to the applicability of the asserted privileges.

¶ 9 Again, Appellants turn to a bevy of federal and unreported cases to support their contention that reinsurance information is commercially sensitive and implicates privilege and work product protection. Nevertheless, many of these cases merely state that reinsurance information *may* raise confidentiality concerns. *See e.g., Potomac Elec. Power Co. v. California Union Ins. Co.,* 136 F.R.D. 1, 3 (D.D.C. 1990) (noting that reinsurance information may constitute proprietary, work product or attorney-client information). Indeed, no absolute exclusion of reinsurance information exists as discovery of such information has been readily permitted. *See Rhone–Poulenc, supra; Medmarc Casualty Insurance Co. v. Arrow International, Inc.,* 2002 WL 1870452 (E.D.Pa. July 29, 2002). Moreover, any concerns regarding confidentiality or commercial sensitivity are further alleviated by the Confidentiality Agreement stipulated to by the parties preserving Appellants' right to designate as confidential any specific information or evidence that requires protection. Thus, we find no error in the trial court's decision to permit discovery of reinsurance information.[6]

■ ¶ 10 Next, Appellants allege that the trial court erred in granting discovery of reserves information because it is irrelevant and privileged. Once more, no Pennsylvania appellate authority exists; therefore, we turn to federal case law for guidance.

¶ 11 Pennsylvania's Eastern District has generally held against the production of insurance reserves information. *See Cantor v. The Equitable Life Assurance Society of the United States,* 1998 WL 306208, at *2 (E.D.Pa. June 9, 1998) (holding that discovery of reserves information will not lead to admissible evidence) (citations omitted). The *Rhone–Poulenc* Court found that reserves information has a tenuous relevance and constitutes work product material because a reserve assesses the value of a claim while taking into account the probability of an adverse judgment, and that any reserve figure calculated with the help of counsel reveals "the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim." *See Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 139 F.R.D. 609, 613 (E.D.Pa.1991) (citations omitted)[7]. Insurance reserves, by their very nature, "are prepared in anticipation of litigation, and consequently, [are] protected from discovery as opinion work product." *Id.* Moreover, establishing the value of a claim requires an "assessment of the body of evidence and the particular legal issues involved in each case, as well as an evaluation of the case's strengths and weaknesses." *Id.* In fact, Appellee's reasons for requesting discovery, namely, to obtain "insight concerning each [sic] the Insurers' analysis and positions concerning [Appellee's] claims at is-

**5.** We recognize that federal cases have no precedential authority in this Court. Nevertheless, "we find this case law persuasive considering the similarities between the federal and state discovery rules." *Dominick v. Hanson,* 753 A.2d 824, 827 (Pa.Super.2000) (noting that Pa.R.C.P. 4003.1 is taken almost verbatim from Fed.R.Civ.P. 26(b)).

**6.** We find equally unpersuasive Appellants' public policy argument regarding the dangers associated with the production of reinsurance information. The fact that the reinsurance industry has endured despite the widespread discovery of such information belies their ominous warning.

**7.** The *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.* matter spawned approximately 20 opinions.

sue," (Appellee's Brief at 29), implies a desire to gain access to the exact information proscribed by the rules.[8] Accordingly, we reverse the trial court's order with respect to reserves information.

■ ¶ 12 Appellant's final issue challenges the discoverability of non-party insureds' claims. Once more, the challenge is based on relevance, privilege, and proprietary grounds and is raised without the benefit of binding precedent. Appellee, in turn, requests this information both to analyze whether Appellants have provided past coverage for the types of claims now asserted, and to disprove certain affirmative defenses.

¶ 13 Other insureds' claims information has been allowed for reasons similar to those declared by Appellee, *see e.g.*, *Rhone–Poulenc Rorer, Inc. v. Home Indemnification Co.*, 1991 WL 78200, at *3 (E.D.Pa. May 7, 1991), *modified on other grounds*, 1991 WL 111040 (E.D.Pa. June 17, 1991); therefore, we too will allow discovery. We note, however, that the requests must not be unduly burdensome and should be limited to environmental claims. In addition, confidential and sensitive matter regarding non-party insureds, such as names, personal information, trade secrets and business practices, must be redacted from any files to be produced, protections inherent in the parties' Confidentiality Agreement.

¶ 14 Order affirmed in part; reversed in part. Case remanded to trial court.

¶ 15 Jurisdiction relinquished.

---

**8.** The Court in *North River Insurance Co. v. Greater New York Mutual Insurance Co.*, 872 F.Supp. 1411 (E.D.Pa.1995), permitted discovery of insurance reserve information, where liability had already been established, for the limited purpose of determining whether defendant insurance company had acted in bad faith when negotiating a settlement. The instant matter contains no such claim.